IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEVEN CAREY,

    Plaintiff,

v.

ODW LOGISTICS INC.,

    Defendant.

Case No. C2-08-CV-0581

JUDGE ALGENON L. MARBLEY

Magistrate Judge King

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant ODW Logistics Inc.'s (hereinafter "Dist-Trans", as ODW Logistics, Inc., does business as Dist-Trans Co.) Motion for Summary Judgment (Dkt. 18) on Plaintiff Steven Carey's ("Carey") Complaint (Dkt. 3). In his Complaint, Carey alleges that: 1) Dist-Trans' termination of Carey in close proximity to his request for leave under the Family Medical Leave Act ("FMLA") was a violation of his FMLA rights under 29 CFR §825; 2) Dist-Trans' termination of Carey was disability discrimination in violation of O.R.C. § 4112.02 and 4112.99; and 3) Dist-Trans' termination of Carey for reporting a workplace injury was retaliation under Ohio's workers compensation law, O.R.C. § 4123.90. Dist-Trans seeks summary judgment on all counts. For the reasons states below, this Court **GRANTS** summary judgment as to Carey's FMLA violation claims and **REMANDS** to state court the remaining claims.

## II. BACKGROUND

Carey began working for Dist-Trans in October 2006. Dist-Trans is a regional truckload carrier with approximately 180 employees, and employed Plaintiff as a truck driver. While employed with Dist-Trans, Carey's supervisor was Todd Alloway, and his dispatcher was Wayne Traylor.

### A. Plaintiff's FMLA Claim

On January 15 or 16, 2008, Carey filed a request for an FMLA leave of absence for shoulder surgery he had scheduled for February 2008. The initial injury to his shoulder had occurred prior to his employment with Dist-Trans. Carey spoke with Nicole Franklin in Human Resources regarding his FMLA request, who informed him that he would not be eligible to get the $185.00 weekly monetary benefit along with his FMLA leave because he was already receiving a monetary benefit through worker's compensation. In his December 11, 2008 deposition, Carey acknowledged that his FMLA leave request was approved.[1]

### B. Plaintiff's Knee Injury

On January 16, 2008, Carey injured his knee at work while getting into his truck. Upon injuring his knee, Carey informed his dispatcher, Mr. Traylor. Plaintiff alleges that Mr. Traylor told him to report the injury to Dan Raver, safety manager for Dist-Trans. After returning with the truck, Carey alleges that he went to Mr. Raver's office and requested medical paperwork and

---

[1] Despite this deposition testimony, in his Opposition Brief, Plaintiff asserts that there is no evidence that his FMLA request was ever approved. Plaintiff does not provide any other evidence beyond this allegation to support a claim that the FMLA request was denied, and in his deposition stated that the FMLA request *was* approved. Whether or not the FMLA request was approved, however, is immaterial to the Court's present decision as it is undisputed that Carey *filed* his leave request.

an incident report form.[2] Mr. Raver informed Carey that he did not have an injury report form, and would let Plaintiff know when he had one to give him. On January 24, 2008, Carey spoke with Ms. Franklin regarding his FMLA leave request, and also informed her about his knee injury. That same day, Carey filled out an injury report form in the presence of Mr. Alloway and Mr. Raver. Carey completed his worker's compensation claim forms at his doctor's office on January 25, 2008, some hours after his termination meeting. At his December 11, 2008 deposition, Carey stated that he filed his worker's compensation on the 25th because that was the day he felt he had been wrongfully terminated, and that he was not planning to file a worker's compensation claim until after he was terminated.

### C. Plaintiff's Termination

On January 24, 2008, after having Carey fill out the injury report form for his knee, Mr. Alloway and Mr. Raver contacted Shelly Churchill, Dist-Trans' Director of Human Resources. Mr. Alloway and Mr. Raver allege that they contacted Ms. Churchill because of Carey's failure to report his injury immediately. Dist-Trans' Employee Handbook, which all employees receive, states that upon being injured at work, the employee must immediately report the injury to his or her supervisor. The Handbook states that failure to report an injury may result in termination of employment.

On January 25, 2008, Carey was called into a termination meeting with Ms. Churchill and Paul Rife, Transportation Analyst. At that meeting, Carey was told that he was being terminated for failure to report his knee injury immediately. Carey contested this because he had

---

[2] Mr. Raver's affidavit, attached to Defendant's Motion for Summary Judgment as Exhibit D, describes a different interaction than the one alleged by Carey. For the purposes of summary judgment, the Court construes the evidence in the light most favorable to the Plaintiff, and therefore will use Carey's allegations in the fact section.

reported the injury to Mr. Traylor. Dist-Trans' position was that failure to report immediately to Mr. Alloway constituted a violation of the Employee Handbook, and was the reason for Carey's termination. At the termination meeting, Carey asked Ms. Churchill if his termination was due to his FMLA leave request. Ms. Churchill at first could not remember whether he had submitted a leave request, and then informed Carey that the FMLA request was not related to his termination.

Carey filed his current claim in Ohio State Court on May 12, 2008. The action was removed by Defendant's to Federal District Court on June 17, 2008. On July 7, 2009, Dist-Trans filed its Motion for Summary Judgment. This Court held a hearing on Dist-Trans' Motion for Summary Judgment on January 29, 2010.

## III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

## IV. LAW AND ANALYSIS
### A. Family Medical Leave Act Violation Claim

In his Complaint, Carey alleges that Dist-Trans violated the FMLA because Carey's termination was in close proximity to his request for leave under the FMLA. Carey does not specify which section of the FMLA Dist-Trans violated, but states broadly that Dist-Trans violated his FMLA rights pursuant to 29 CFR § 825 et. seq. The FMLA gives qualifying employees the right to take up to 12 weeks of unpaid leave because of, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D). While FMLA retaliation and interference claims are governed by 29 U.S.C. §§ 2615 (a)(1) & (2), the implementing regulations also regulate employer conduct. *Bradley v. Mary Rutran Hosp. Assoc.*, 322 F. Supp. 2d 926, 937 (S.D. Ohio 2004). Under the FMLA, 29 U.S.C. §§ 2615(a)(1) & (2) prohibit:

(a) Interference with rights

> (1) Exercise of rights
>
> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
>
> (2) Discrimination
>
> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. §§ 2615(a)(1) & (2)

The implementing regulations explain the FMLA's prohibitions as follows:

> the Act's prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights... employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.

29 CFR § 825.220(c).

There are two theories of recovery available to employees under the FMLA: 1) inference with FMLA rights, pursuant to 29 U.S.C. § 2615(a)(1); and 2) retaliation, pursuant to § 2615(a)(2). *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 446 (6th Cir. 2007). Where a plaintiff alleges an FMLA claim, the complaint need not state which theory the plaintiff is asserting, and, in fact, an FMLA claim can "encompass either the interference theory, the retaliation theory, or

both theories." *Id.* A claim for retaliatory discharge, as is the case here, is cognizable under both interference theory and retaliation theory. *Id.* at 446-47 (citing to *Arban v. West Publ'g Corp.*, 345 F.3d 390, 403 (6th Cir. 2003).[3] The Sixth Circuit applies separate frameworks to an interference claim under § 2615(a)(1) and to a retaliation claim under § 2615(a)(2).[4]

This Court has previously articulated a single-framework test for any suit alleging an FMLA violation. *See Bradley v. Mary Rutran Hosp. Assoc.*, 322 F. Supp. 2d 926, 937 (S.D. Ohio 2004); *Schmauch v. Honda of America Manuf., Inc.*, 295 F. Supp. 3d 823, 830 (S.D. Ohio 2003). In fashioning the single-framework test, this Court noted the lack of clarity in FMLA law. The Sixth Circuit has since made clear which framework is to be used for different FMLA theories of recovery. *Mitchell v. County of Wayne*, 337 Fed. Appx. 526 (6th Cir. July 24, 2009). Accordingly, this Court now applies the frameworks for interference and retaliation as articulated by *Mitchell*, *Wysong*, and *Arban*.

### 1. FMLA Interference Claim

In order for Carey to succeed on his FMLA interference claim under § 2615(a)(1) for retaliatory discharge, he has the burden of establishing that at the time his claim arose: 1) Carey was an FMLA eligible employee; 2) Dist-Trans was an FMLA employer; 3) Carey was entitled to leave under the FMLA; 4) Carey gave Dist-Trans notice of his intention to take leave; and 5)

---

[3] In his Opposition, Carey argues both FMLA retaliation *and* interference, and Dist-Trans claims Carey only pled retaliation in his Complaint. As explained by *Wysong*, Carey had only to plead an FMLA violation, which he did, to recover under either or both the interference and retaliation theories.

[4] Neither Dist-Trans nor Carey applied the correct framework in their briefing to the FMLA interference claim, relying instead on cases from the Northern and Southern Districts of Ohio, and Ohio State Courts, authority that does not supercede the binding precedent of Sixth Circuit case law.

Dist-Trans somehow used the leave against Carey and in an unlawful manner, as provided in either the statute or regulations.[5] Each element must be proved by a preponderance of the evidence. *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007).

The first four factors of the test are not disputed and therefore are not at issue in this case. What remains is the question of causation in the fifth factor. That is: has Carey shown by a preponderance of the evidence that Dist-Trans used Carey's FMLA leave request in an unlawful manner, in this case in a retaliatory discharge? The only evidence that Carey has put forth in support of his claim of FMLA interference is that there was temporal proximity (somewhere between a week and a few days) between his FMLA leave request for shoulder surgery and his termination.[6] Carey provides no other evidence to support his argument, and, in fact, defeats his

---

[5]The Sixth Circuit has also used the following for the fifth factor: "the employer denied the employee FMLA benefits to which she was entitled." *Cavin. v. Honda of Am. Mgf., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). In *Wysong*, however, the court noted that:

> Although this language is different from the language used in *Cavin*, it does not conflict with *Cavin*, and, in fact, adds depth to the fifth element articulated in *Cavin*. Under 29 C.F.R. § 825.220(c) "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." We have earlier held that this negative-factor analysis is applicable in analyzing an interference claim. If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled. We, therefore, have no objection to rephrasing the fifth element of an interference claim as being that the employer has "somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations."

*Id.* (internal citations omitted).

[6] While there is some question as to whether Carey complied with the spirit of the Dist-Trans policy by reporting his knee injury to Wayne Traylor, neither party disputes that Carey did

own argument with the transcript of his termination meeting in which Ms. Churchill stated that his termination was *not* related to his FMLA leave request and was because of his failure to report his knee injury. Without more, there is no genuine issue of material fact as to whether Dist-Trans used Carey's FMLA leave request in his termination. Carey points to no case law where temporal proximity alone in an FMLA interference claim was enough to defeat summary judgment. While neither the Sixth Circuit nor the Southern District of Ohio has addressed this factual situation under an FMLA interference claim, in *Zsenyuk v. City of Carson*, the Ninth Circuit held that where a plaintiff did not have direct evidence of interference, and where his only circumstantial evidence offered was temporal proximity "the district court properly granted summary judgment...because Zsenyuk failed to demonstrate that material issues of fact exist on the question of causation." 99 Fed. Appx. 794, 796 (9th Cir. 2004). Carey suffers the same failure as Zsenyuk. Accordingly, summary judgment is **GRANTED** for Dist-Trans on the issue of FMLA interference.

### 2. FMLA Retaliation

In assessing a claim for retaliatory discharge under §2615(a)(2), courts apply a burden-shifting framework. "A retaliation theory of recovery under the FMLA is different from an interference theory because under a retaliation theory, the intent of the employer matters." *Mitchell v. County of Wayne*, 337 Fed. Appx. 526, 534 (6th Cir. 2009) (citing to *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). Under a burden-shifting framework, Carey must first make out a prima facie case by demonstrating the following: 1) Carey must show that he engaged in a protected activity under the FMLA; 2) Carey must show that Dist-Trans knew he

---

not technically comply with the Dist-Trans policy when he failed to report his injury to Todd Alloway.

had exercised his FMLA rights; 3) Carey experienced an adverse employment action; and 4) there was a casual connection between the protected activity and the adverse action. If Carey is able to demonstrate a prima facie case, the burden of production shifts to Dist-Trans to articulate a legitimate, non-retaliatory reason for the adverse action. The burden then shifts back to Carey to show by a preponderance of the evidence that the reason offered by Dist-Trans was pretextual and intended to mask actual retaliation. Carey can establish pretext by showing that: 1) the reason has no basis in fact; 2) the proffered reason did not motivate the discharge; or 3) the reason was insufficient to warrant termination. *Wharton v. Groman-Rupp Co.*, 309 Fed. Appx. 990, 997 (6th Cir. 2009); *Heady v. United States Enrichment Corp.*, 146 Fed. Appx. 766, 770-71 (6th Cir. 2005) .

In its Motion for Summary Judgement, Dist-Trans concedes that Carey has met his prima facie burden. Temporal proximity of an adverse action (Carey's termination) to a protected activity (Carey's filing of an FMLA leave request) is enough to make out a prima facie case. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *see also Heady v. United States Enrichment Corp.*, 146 Fed. Appx. 766, 770 (6th Cir. 2005) ("Proximity in time between a request for FMLA-protected leave and discharge may provide sufficient evidence of a causal connection for purposes of establishing a prima facie case of retaliation."). Dist-Trans then met its burden of production by putting forth evidence that the reason for Carey's termination was because he violated the Dist-Trans Employee Handbook when he failed to immediately report a workplace injury. The burden, therefore, shifts to Carey to show by a preponderance of the evidence that Dist-Trans termination based on his failure to report his knee

injury was pretextual.[7] The only evidence that Carey hasadducedto show that his termination was pretextual is temporal proximity. While this might be enough to establish a prima facie case, it is not enough to defeat pretext or to create a genuine issue of material fact as to whether Dist-Trans reasons was pretextual. *Heady v. United States Enrichment Corp.*, 146 Fed. Appx. at 771 (holding that "[w]hile temporal proximity is sufficient to meet the low burden required to establish a prima facie case of retaliation in violation of the FMLA, it is not alone sufficient to establish that an employer's legitimate, non-discriminatory reason for discharge was a pretext."); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) (where employee had nothing but prxomity in time between date he informed employer of intention to take leave and his discharge, "such temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharing an employee was in fact pretextual."); *Black v. Holzer Clinic, Inc.*, No.C2-07-cv-194, 2009 WL 650402, *10 (S.D. Ohio Mar. 10 2009)(suspect timing can provide indirect evidence of casual connection for prima facie case, but is not alone sufficient to establish pretext). Accordingly, Dist-Trans Motion for Summary Judgement as to Carey's FMLA retaliation claim is hereby **GRANTED**.

## B. State Law Claims

---

[7] While there may be questions as to whether Dist-Trans policies are fair or whether Carey intentionally violated the injury-reporting requirement, such arguments do not go towards showing that Dist-Trans *reasons* for his discharge were untrue. *See Heady v. United States Enrichment Corp.*, 146 Fed. Appx. at 771.

Carey's two remaining claims are: 1) Carey's disability discrimination claim, under O.R.C. §§ 4112.02 and 4112.99;[8] and 2) Carey's worker's compensation retaliation claim, under O.R.C. § 4123.90. Both of these claims are state law claims and governed by the laws of Ohio. While this Court may exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367, Ohio courts are better suited to adjudicate claims involving solely state law issues. The Court therefore **REMANDS** the remaining claims to state court pursuant to 28 U.S.C. § 1367(c)(3).

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's FMLA violation claim in Count 1. The remainder of the case is **REMANDED** to Franklin County Court of Common Pleas, from which it was removed.

**IT IS SO ORDERED.**

                                                                   <u>s/Algenon L. Marbley</u>
                                                                    **ALGENON L. MARBLEY**

                                                                    **United States District Court Judge**

**DATED: February 16, 2010**

---

[8] Plaintiff has stated in his Opposition Brief that he is not pursuing an ORC 4112 claim, however there has been no motion from either party to dismiss the claim.